Our next case for argument is 24-1730, AGI Suretrack v. Farmers Edge. Mr. Kagan, please proceed. Thank you, Your Honor. May it please the Court, Jonathan Kagan of Irela, Manila for Pellant and Cross Pelley AGI Suretrack. So the district judge erred in this case in conducting the 101 analysis because he was under the mistaken impression that the claim of novelty here, the point of this patent, was hardware only. And that is in his order at page 7 on the appendix. And he cites to a page in our brief to say that we are only arguing that this is a hardware patent. But the page in our brief that he cites to says exactly the opposite. And this is on page 1680 of the appendix. We expressly said, the inventive concept claimed in the asserted patents is a novel data collection and exchange system which operates through a unique combination of software features in order to solve a specific technical problem with how precision agriculture machines function, namely the problem of interoperability between machines from different manufacturers. The reason this is so important is have the judge properly focused on the software elements of the device that's claimed in Claim 1. But the Court could read the claims. And then he said that it was essentially collecting data, comparing, and sharing the results. He did. He did. That's correct. Well, at the high level of generality, as this Court has, of course, explained, any claim can ultimately be looked at at the high level of generality. But what this Court's teachings have said is you have to look at the specific elements of the claim in order to determine what is there. And in this case, if you look at the specific elements of the claim, we're more than claiming. Obviously data's involved. But what we claim, and what the points of novelty in this patent are, and we know this because of the prosecution history and what was done to overcome a 103 objection, but it is a plurality of implement profiles, each of which contains certain specific information, a manufacturer code, a device class, a version number, and a communication protocol. And then those communication protocols correspond to each of the implements that a farmer might use and allow data to be extracted and used from those devices. So this is not something where we're just saying there's the cases that talk about organization of data. They generally talk about data that's already there. There's a technical problem here, which is that when you have a tractor which pulls implements and you have implements themselves, that's what's pulled behind. And you're trying to get information from those implements into the tractor so that you can combine that into these records where you can get data. It's incompatible when you're using equipment from different manufacturers. So if you have a John Deere tractor and you have a John Deere implement, you're fine. But if you have a John Deere tractor and a Case New Holland sprayer, you could be in trouble because you can't get the data. They're incompatible. That's the specific technical problem that we're facing here. And the solution... And where do the claims recite the solution? Right. They recite the solution as having a plurality of implement profiles, each of which has a communication protocol that is going to be specific to that implement so the data from that implement can be processed using that communication protocol. I can read the exact language of the claim if you'd like. That's the summary of it. But that is what is... I don't even see where in the written description it describes the problem of inoperability that you now say is the inventive concept that these claims were solving. Well, first of all, in the prosecution history, it's quite clear. When the examiner issued the... So are you conceding that there is nothing in the written description that points to this problem of inoperability or how this claim amounts to a solution to it? No, not at all. Then tell me where. Show me where in the patent column and line number. Okay. So if you look at the bottom of column 2 and the top of column 3 of the patent, it talks about the need of having these electronic farm records which contain multiple layers of data from different machines. We have column 2. Why don't you read me what you're talking about. So at the bottom... I'm sorry. It's column 3 and column 4, I believe. So it says the electronic farm records for the farming business includes general information about the farming business, as well as detailed descriptions for each farming operation carried out at the farming business, including, for example, information indicating the date, type, and location of each farming operation, the type of farming operation, and certain operating events. So that's from... That occurred during the performance of each farming operation. So at this point in the patent, what it's talking about is the need to get data from multiple machines because there's multiple farming operations that are going to occur at every aspect of the farm. That's what the patent says. So the patent doesn't specifically say, oh, by the way, there's a problem here with interoperability. But it doesn't need to because the record is absolutely clear that everybody of skill and the art was aware of that problem. We've cited a declaration from our experts saying interoperability was a problem. We've provided citations from Farmer's Edge's expert, Mr. Alt, who in fact said, yes, interoperability was a problem that everybody knew about. And in fact, we also cited to the court just several months before this patent was filed, during the initial patent application was filed, there was an article saying that interoperability is a problem and the ISO 11783 standard, which had been a proposed solution to this problem, was not adequate. And that is what is cited in this patent. So if you take these disclosures that you need to have multiple pieces of equipment all collecting this data into the record, and you take what we have shown, which is that people of skill and the art understood that interoperability was a problem. Nobody says it's not. I mean, I don't believe there's anything in the record where any side or any party has said, no, interoperability wasn't a problem. Everybody knew that you could get data from all machines. I just don't see where there's anything in the claims or in the written description that explains how these claims recite elements or components to describe how the invention overcomes this purported interoperability problem. Okay, well, so, but that's where the communication protocols come in. So a communication protocol is individual for every single implement. So every implement profile has to have its own communication protocol. And what the claims say is you interpret the data coming in from the implement using... What element of the claims do you think contains this inventive concept? Okay, so... On claim one and, you know, A, B, C, D, which element? So in claim element D, three, you have a plurality of implement profiles, each defining for a known farming implement, a known manufacturer code, a known device class, a known version, and a known communication protocol. So what you do, this data structure that we've created, this specific data structure that we've created, is this plurality of implement profiles, each of which contains very specific information. This is not abstract. This is specific, which includes a communication protocol, which is essentially the language that that particular implement speaks. You say it's not abstract. It's software, right? It's information. This is... This is a device programmed with software. And so it would be evaluated under the sports standard as it's set forth, for example, in the Enfish case, where it says what you do when you're looking at software is you look to see, is there a technical problem? Here the technical problem is you can't... Different machines have different communication protocols. You can't talk to all of them. Is there... That's a specific problem everyone acknowledges. That's the interoperability. Is there a specific technical solution? There is. We define. You have the multiple profiles. Each has certain information. Each has its own communication protocol. Why is that a technical solution other than a software solution? Well, it's a technical solution that's implemented in software. But when you look at the... When you look, for example, at the Enfish case, which was just... There's a database, and it was a new type of database. It was just a new way of organizing and using data. And that's done on conventional computers, and obviously that is not an abstract idea because there was information given about what the structure was, how you were structuring that database, what you were doing. Same here. What we're doing is we're saying structure the information in the following way. Create a plurality of implement profiles. Each of them has certain information. And this was new. There's no dispute that there was a 103 rejection. Once we put in the plurality of implement profiles, the patent office withdrew its objection. This was also the problem with the Canadian patent. The Canadian patent didn't have the plurality of implement profiles. Well, of course, we're not dealing with obviousness here. Yes. That is true. But this is... Something could be not obvious, and yet abstract. It could be. But in this case... So obviously it overcame the novelty objection. I'm not trying to say that the fact that we overcame a novelty objection means there's no 101 sheet. But what this court has explained is when you're looking at what the idea is, you have to look at it in light of the prior art. That's what you're trying to figure out. What is the inventive idea here? And the inventive idea here is using multiple implement profiles, each of which has... includes a communication protocol, which can then be used to interpret the data from the machine that matches with that. And because there's a plurality of profiles, you can deal with a plurality of machines. That is how you overcome the interoperability problem. Well, all those things could be done manually. You're just using a generic computer. Absolutely not. There's no... This data could not be extracted from the machine's manual. There's literally no way to extract the data. If you have... You've got your John Deere tractor, and you've got your Agco sprayer. There's no way of extracting that data manually. It cannot be done. And there's certainly nothing in the record suggesting that that could happen. Now, once you've... Why would they have it if it couldn't be done manually? Well, the reason they... You've got an invention here that allows it to be done. The reason that it couldn't be done manually... Well, we don't have the manufacturers here, right? But there's certainly a lot of speculation in some of the documents we cited that manufacturers, it is not in their best interest to have data that anybody can just pull out. So if Agco is the one selling you the tractor, Agco is going to also want to sell you their sprayer. They're not going to want you to go buy a John Deere sprayer. So what they're going to do is they're going to have their equipment be only compatible with other of their equipment. But if you buy a John Deere sprayer, they don't want you getting that data, or you can't get that data. Our patent solves... So you're a farmer... They try to lock a farmer in to having only one color, one brand of equipment. What our patent does is unlock that from the farmer's perspective. That is a technical problem. Mr. Kagan, you're using most of your rebuttal time. Did you want to save any? Yes, I do, Your Honor. Thank you very much. I will reserve the rest. Good morning, Your Honors. May it please the Court, Nathan Mammon on behalf of Farmer's Edge. Judge Mayer, I'd like to pick up with your question about whether this could be done manually. And I have to disagree with my friend because I think the record explicitly shows it can be and, in fact, was done manually. That's how they got the implement profiles to begin with. That's in the undisputed statement of facts that they didn't dispute, Appendix 1063. The way they got these implement profiles and figured out how to mix and match implements was they did manual testing and record where things were and then put that down into a data construct. So that is exactly how they came about doing what they're claiming is their invention, is through manual. And their own inventor said you could still do it manually. There's an argument, well, it'd take a lot of time. You couldn't get all the data. But that's going to the inherent advantages of computers versus a technical solution here, which the patent does not have. Judge Moore, the patent and the written description says nothing about interoperability. The district court, I think, was exactly right based on the specification and the claims of saying what this... It's about capturing a massive amount of data and storing it and sharing it. Exactly, yes. I mean, that's found repeatedly throughout the patent. The technical description, the very beginning of the patent, Column 1. Usually when I talk, you stop talking. Sorry. Go ahead. So Column 1, Line 19. I think they're friendly statements. I don't usually want to cut those off. I don't, Your Honor. I thank you, yes. Column 1, Line 19. The present invention rates generally to automated systems and methods for capturing, processing, and sharing data. That's exactly what the district court said this invention was. You find that again when you get to the description of the embodiments. Column 3, Line 16 through 20 again defines this as tracking, collecting, storing, sharing, and farming operation data. You look at the claims. Go to Claim 1, which everyone agrees is representative. The software is in Element E. And you look at E1. That's the collecting step. E2 and E3, analyst step. E4 is the sharing step. It's all what this patent is about, is the collecting, sharing of data. It may be that my colleagues have more questions on 101 than I do, but I would like you to cover your cross-appeal, please. Sure, yes. I'm happy to answer any questions the court has about 101, but the invention is about the collection of data. It's not improving anything in a computer itself. Their brief itself mentions that this is plugged into existing data ports. So it's not improving the operation. It's plugged into existing data ports and harvesting data from the track. I'm sorry, Your Honor. On the cross-appeal, the district court respectfully not allowing us to set forth a case for why this case was exceptional. The case should have never been filed because they abandoned these patents during the prior trade secret litigation, only to resurrect them after that trade secret litigation became final. Well, but isn't it strange to me, was there a motion to seek attorney's fees and deem this an exceptional case? No, there wasn't, Your Honor, because the court, in its summary judgment order, which also closed the case and disposed of everything else that was pending, declared the case wasn't exceptional. And so at that point, we had no Rule 11 basis to file a motion for attorney's fees because, as the Supreme Court has said, you need an exceptional case. That's the one requirement you have to have for attorney's fees. And so the exceptional case had already been, the court had said it's not exceptional before we even addressed that point. And so we had no opportunity to file a motion for attorney's fees because the predicate issue that we needed had already been decided against us. Six days later, as they appealed, the case was off on appeal in any stretch. But, you know, the issue was decided whether this case was exceptional. And the court, did the court articulate any fact findings, either in a written decision or maybe at a hearing on the exceptionality? No, no, it's at the beginning of the court's order. So it's just like a sentence, right? Yes. It just says, my sentencing case is not exceptional. Yes, yes. And it cleared the deck of, you know, just pending things, including, as you said, both sides haven't shown exceptional. I mean, only we could have been exceptional on that point because you have to be a prevailing party. And so just sort of clearing the deck statement, no factual finding, no analysis of what was going on in the case. There was a pending motions that we identified here for a protective order violation that just never got addressed. And so none of that was ever considered by the district court, let alone rejected that we hadn't shown exceptionality because we never had that opportunity. And so we think for that reason, at the very least, we're entitled and we should be allowed to show why on this record, and there's other facts as well, but the facts that we've laid out for the court here, why we think there was a basis for the court to declare this case was exceptional, shouldn't have been filed, shouldn't have gone on as long as it did, and we should be able to go to the court and seek that declaration and then seek attorneys. This court has other questions about either exceptional case or one-on-one. We thank you, the court, for its time. Thank you, Mr. Monette. Mr. Kagan, you have some final comments. Thank you, Your Honor. Let me just quickly, though, address the exceptional case point that you just raised. Under Eighth Circuit law, which controls procedurally here, if you fail to move for fees within the time prescribed by Rule 54, you are barred. It cannot be resurrected. There's nothing you can do about it. Second point is what their claim is is that the judge improperly sui sponte granted summary judgment on the exceptionality claim without giving them an opportunity to be heard. Again, the Eighth Circuit law is absolutely... Well, you can only grant summary judgment if there's a summary judgment motion, right? I mean, and here we have no motion for attorney fees. Right, but Eighth Circuit law talks about what to do in this exact situation. Well, but what about the fact that we don't have a reviewable decision? They're also disputing the exceptionality on appeal, and I have a sentence with absolutely no fact findings or analysis or even a CEG site. I got nothing. Correct. How am I supposed to review a fact finding for which there is no analysis? So you're not, Your Honor, because what they failed to do... Then I have to make it merendous. No, you do not. That is... They have waived. Under Eighth Circuit precedent, if a party... If there's a sui sponte grant of summary judgment and the party has the opportunity to object to it and provide a statement of prejudice, in fact, they're required to do that under Eighth Circuit law. It's a sure value case. If they fail to do that, they have waived the issue under Eighth Circuit law. This is not discretionary. They can ask for more time if they want, but if... That is the law of the Eighth Circuit, which this Court should apply in terms of those procedural issues. The Eighth Circuit law is clear that that issue has been waived by their failure to object and provide a statement of prejudice. The one case that they cite in response is called American Red Cross, but again, the Eighth Circuit is actually in the United Health Group case. It expressly found that that case is non-precedential because it did not address the merits of this issue. So Eighth Circuit law is clear that they have waived this response, and that is why you cannot review it. Is there any Federal Circuit law on this point? I do not believe there's Federal Circuit law other than the Federal Circuit law that says you apply the law of the... You would apply the law of the Eighth Circuit in this case. What case says we apply the law of the Eighth Circuit to the exceptionality? Not to exceptionality, to procedural issues, like Rule 54, like timing on the timing of motions. I think we cited it at the very beginning of our brief. My time is up. Almost up. Oh, it is up. You can respond only on exceptionality. Sure, yes, just a quick point on that. I don't believe this is actually a correct reading of the Eighth Circuit case because if you look at the Eighth Circuit cases, including sure value, which counsel mentioned, in all the Eighth Circuit cases that they've identified, there was an opportunity to object. There was notice in the sure value that the district court had indicated on a telephone call that it might rule on the matter, and they didn't object on that telephone conference call. None of that occurred here. We never had an opportunity to address... We were never alerted that the exceptional case issue would be raised until the court included it in its summary judgment order. So those Eighth Circuit cases, they don't apply here because in those cases, notice was provided, and here there's no argument at all that we had notice before the court issued its ruling. But why was there no waiver under Rule 54? Well, because the predicate fact had been decided, the exceptional case. We would have been in a position of... We couldn't have filed a motion, a good faith basis, under Rule 11 to file a motion for exceptional case unless we had an exceptional case, a motion of attorney's fees, unless we had an exceptional case. And because the court had already ruled on that, it decided the issue that we couldn't then go file a Rule 54 motion. It had taken the issue out of our hands, and so we couldn't have filed it in that regard. Well, if the court has further questions, I thank the court for its time.